### 9857

#### RUFF v. COLUMBIA RAILWAY, GAS AND ELECTRIC CO.

#### (96 S. E. 183.)

1. TRIAL—SUBMISSION TO JURY—INFERENCES FROM EVIDENCE.—There being evidence from which more than one inference can be drawn, there cannot be a direction of verdict, but it must be submitted to the jury.

2. ESTOPPEL—UNRECORDED CONDITIONAL SALE.—A lessee of a furnished house, without notice of an unrecorded conditional sale to the lessor of articles therein, is not estopped to claim right of possession thereof against the seller, merely because acknowledging his title; only an assumption by him, on a consideration, of the lessor's obligation to pay for them and subsequent failure to pay, will estop him.

3. LANDLORD AND TENANT—LEASES—NECESSITY OF RECORDING.—A lease for less than a year need not be recorded.

4. SALES—CONDITIONAL SALE—RECORDING—"SUBSEQUENT CREDITOR OR PURCHASER."—A lessee of a furnished house, as to articles therein bought by the lessor on conditional sale, is a subsequent purchaser or creditor, within Civ. Code 1912, sec. 3740, declaring an agreement between seller and buyer of personal property, whereby an interest therein is reserved to the seller, void as to subsequent creditors or buyers for a valuable consideration unless it be in writing and recorded.

Before SMITH, J., Richland, Summer term, 1917.    Affirmed.

Action by W. H. Ruff, Jr., against the Columbia Railway, Gas and Electric Company.    Judgment for plaintiff, and defendant appeals.

The charge of the Court below is as follows:

The Court: Mr. Foreman and Gentlemen of the Jury: This action is brought by the plaintiff to recover actual and punitive damages of the defendant for certain acts of wrong which are alleged therein.

The plaintiff contends and alleges in this case that he had leased a furnished home from one C. W. Brown, in the city of Columbia, and that a part of the furniture consisted of one gas stove and one gas heater; that those articles, at the time the plaintiff rented the premises in question, were in the possession of C. W. Brown, his landlord, and that, so far as he knew, the landlord was the owner thereof; that on the 20th day of September, in the year 1915, the defendant, through its agents and servants, negligently, wilfully, maliciously, and with utter disregard of the rights of the plaintiff, unlawfully entered upon the said premises and removed the said gas stove and gas heater, depriving the plaintiff of the use thereof and causing him expense, trouble, vexation, as a result of this removal; and that by reason of this negligent, careless, wilful, and wanton and high-handed act of the defendant in unlawfully entering the premises, he has been damaged in the sum of $5,000.

The defendant denies every allegation of that complaint which would impute to it any liability whatsoever in the matter, and it alleges that Brown, the landlord, had contracted with the defendant company to lease or buy the articles in question at a certain valuation under a contract bearing date the 20th day of December, 1913, which Brown had failed to carry out; that defendant notified plaintiff of the contract, and the plaintiff agreed to see Brown about the matter, and if Brown would not pay the debt the plaintiff would; and thereafter, not hearing anything from either the plaintiff or Brown, the landlord, and the obligation still remaining unpaid, it removed the articles in question in pursuance of its legal right under the contract referred to, and that it is not liable, as claimed by the complaint in the case.

It is provided under the law of this State, Mr. Foreman and gentlemen of the jury, that in the absence of provision indicating to the contrary a lease of premises is presumed to be for one year. And if you find in this case that the premises in question were leased to the plaintiff by Brown, the presumption is, in the absence of testimony to the contrary, that he had leased the premises for one year.

Now, there is another provision of the Code to which it is necessary to call your attention in this case, which is as follows (section 3740) : "Every agreement between the vendor and vendee, bailor or bailee of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages; but nothing herein contained shall apply to livery stable keepers, innkeepers, or any other persons letting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs or work or labor done thereon, or as a pledge or collateral to a loan."

The object of that provision is that when a person sells to another personal property and retains some interest therein, or where personal property is intrusted to the care of another and some particular duty is to be discharged in regard thereto, the property, in other words, being put in the possession of the vendee or the bailee, if the seller retains any interest in the same, in order that he may be able to assert that interest, whatever it may be, against a subsequent creditor—that is, a person who should thereafter become indebted to the party—whether a lien creditor or simple contract creditor, or in case the property is purchased subsequently for a valuable consideration, under those circumstances, in order to protect that reserved interest or to protect the right of the party as bailor against those people, it is necessary that

the contract in which the interest is reserved or the bailment agreed should be first put in writing, and it must be recorded in the office of the clerk of the Court in accordance with provisions providing for the recording of mortgages.

Now there is a paper offered° here in evidence purporting to be a contract between Brown and the defendant here, Columbia Railway, Gas & Electric Company.   It is the duty of the Court to construe written instruments.   It is not relieved of that duty even in cases where provisions are apparently inconsistent or difficult of construction.   It is only in cases of ambiguity, doubt, that the matter is submitted to the jury for its determination.   There is no ambiguity with regard to the paper offered in evidence here, and so it becomes the duty of the Court to construe it, and the Court in doing so will only refer to one or two clauses of the contract: "Said appliances are leased for use with gas sold by company, and remain the sole property of company until such future time as total amount paid as rental shall equal above mentioned valuation, at which future time company shall surrender this lease and shall give a receipt in full for rental, which receipt shall be in effect a bill of sale for said appliances, transferring full right, title, and ownership from company to subscriber."

And the fourth paragraph of this contract is as follows: "Upon failure of subscriber to perform any, either, or all of the foregoing agreements, company may, at its option, shut off gas supply, remove meter and connection, and terminate this lease, and immediately, and without legal process, take possession of and remove any and all of said appliances, and all rental which shall have been paid by subscriber to company shall be and apply only as reasonable compensation for use of said appliances and for work done and expenses incurred by company up to and including date of such removal."

There is some doubt under the decisions in this State, Mr. Foreman and gentlemen of the jury, whether that would be

regarded as a conditional sale or a mortgage, but, fortunately in this case, it is not a material inquiry. If it be viewed as a mortgage, upon the failure to perform its conditions, if there was a failure, the title to the property would revert—would vest in the mortgagee—that is, the person to whom it was given. If the title passed out in this case to Brown, and there was a failure on the part of Brown to perform the conditions in the clause read, the title of the property would vest in the defendant. But if the title never passed from the defendant, if the contract be so construed as to make it that kind of an agreement in which the title never passed, why, of course, it would still be there until the conditions had been performed, and it could only pass in the event that the conditions were performed.

So, if this be regarded as a paper in which the title was reserved to the defendant—in the defendant, then, under the provisions which the Court has read to you, in order that it might be effective against subsequent creditors, whether simple contract creditors or lien creditors or purchasers for value and without notice—it was necessary that it should not only be in writing, but put on record in the office of the clerk of Court in accordance with the provisions provided for recording of mortgages. If it be regarded as a mortgage, then, in order to protect—in order for the defendant to protect itself against subsequent purchasers for value without notice—it would also have to be put on record.

Now, the statute here makes some exceptions. It will not be contended for a moment that some of these exceptions are applicable, as, for example, that the clause relating to livery stables shall apply, or innkeepers, or deposit of property for repairs, or work or labor done thereon, or as pledge or collateral for a loan. I say it will not be contended that those provisions are applicable to any phase of this case. The only provision of the section by way of exception to which the Court should particularly call attention is that clause which provides as follows, "or any other persons let-

ting or hiring property for temporary use." Now, if the property is hired or let for temporary use, the provisions of this section do not apply. The temporary use contemplated in that act is such use on the part of the person to whom the property is let as will contemplate a return thereof to the owner who lets it—the owner.

If it is within the contemplation of the parties that the title thereto shall pass, or that it shall pass upon condition, in other words, if it is a conditional sale, or if the title is passed and a mortgage is taken of it, it would not be such a temporary use as is contemplated by the statute as a matter of law. If, however, disregarding the statute, one has actual notice or the circumstances are such as should put a reasonable person upon inquiry, and are of such a nature that if pursued would lead to notice, that is sufficient, regardless of the provisions of the act. There are, in other words, either constructive notice or actual notice, but if there is neither in the case and the seller retains interest in the property, before he can assert that interest, against a subsequent purchaser without notice or a subsequent creditor, the contract must be in writing and must be either recorded or the party must have actual notice. And if such is not the case, then the contract is void—null and void as to that particular person.

The lease of a premises for a term of years is such a purchase as would be embraced within the provisions of that section. So, to make the matter as plain as I can, and as practicable as I can, if in this particular case the plaintiff had no notice, actual notice of the terms of this contract, this agreement between the parties, that is, between Brown and the defendant, or the circumstances were not such as to put a reasonable person upon inquiry which, if pursued, would lead to that notice, if that was not the case—and it is admitted that that paper was not put on record—and it would be null and void as to the plaintiff under the circumstances stated, because there would not be any notice, actual or

constructive. But if he rented the premises, the leased premises, furnished, and the articles in question here were part and parcel of the furniture leased, then he secured the right to the possession of those articles, as much so as he did the place itself, and no one without legal authority could disturb or could invade that possession under those circumstances.

Now, gentlemen of the jury, it is the policy of the law not to discourage men entering into contract when not contrary to the law or public policy. And, therefore, if the plaintiff had notice subsequent to his entering into the lease contract or rental of the place, if he had notice subsequent thereto of the contract between Brown and the defendant, he could, upon a sufficient consideration, valuable consideration—and that means any benefit or advantage coming to him by reason of the contract, or injury or disadvantage to the other party—he could, upon a valuable consideration, enter into an agreement whereby he would assume the obligations of this contract of his landlord. It would have to be supported by a proper consideration, however. And if he did assume that obligation under the circumstances stated, and it was so understood, and the company, the defendant, relied upon him to carry it out, and thereafter he failed to do so, standing in the shoes of Brown, why, then, it would have a right to enter upon the premises peaceably and quietly and recover or take into its possession the property embraced within the contract, even if it be viewed as a chattel mortgage, after condition broken, or even if it be viewed as a contract in which the defendant originally reserved the title, that is to say, that the title never passed from the defendant to Brown. It could not act oppressively, and it could not engage in a breach of the peace, but it had the right, under the contract, original contract, to enter peaceably and quietly and obtain the possession if the conditions existed upon which it had that right under the contract.

Now, a thing is done carelessly and negligently when a person fails to exercise ordinary care and prudence under all of the surrounding facts and circumstances, where the mind is in such condition that the act is prompted by inadvertence. A thing, however, may be done unlawfully, wilfully, wantonly, or maliciously. The Supreme Court of this State has said in one of the old cases that the three words, "unlawful," "wilful' and "malicious" represent an ascending grade of responsibility, of legal responsibility, reaching the legal climax in the word "malice" or "malicious." A thing may be unlawful and not by any means be wilful, wanton, reckless, or malicious. The Court has sometimes used this illustration: Suppose that, Mr. Foreman, you should notify a person not to enter upon your lands, and thereafter, not knowing precisely where the line was, in the very effort to stay away from your lands he might trespass thereon, enter thereon. Inasmuch as the Court has said that the intention in that particular offense is no part of the offense, he will have committed an unlawful act, because he has gone upon your lands not only without your assent, your authority, but against your objection; and for that trespass he would be at least liable, uider the cases in this State, for nominal damages, even though no witness had attempted to estimate in dollars and cents the amount of damages. But you will observe that that act would not be a wilful act or a wanton act. The books generaly hold that a thing is wilfully done when it is intentionally done or designedly done.

Now, a thing may be wilfully done or intentionally done, and not by any means be maliciously done. A man may wilfully and intentionally take the life of another, or he may, by the exercise of the will, enter upon the lands of another when he has the right to do so. In order to constitute such an act a malicious one, it must not be an unlawful act or a wrongful act, but it must be wilfully done without a legal cause or excuse under such circumstances as will

indicate a wanton intent, a desire to disregard purposely, knowingly, intentionally, the legal rights of another.

.If the act in question here, if it was—I believe it is not disputed that the articles were removed—if that was done without the assent, over the objection of the plaintiff here, acting through this agent, and the act was wilful, wanton or reckless, or if there was no legal cause or excuse for it, and it was done under such circumstances as would evidence misconduct, a disregard of the rights of the plaintiff in the case, it would be subject to punitive damages. If one party acts under a mistake, *bona fide* mistake, or through carelessness or negligence, or under the honest *bona fide* belief that he is asserting a legal right, and the action is being taken solely for the protection of what he conceives to be his legal right, while he would be liable for damages, such damages as the party had sustained as a result of that act, he would not be liable for punitive damages, damages by way of punishment, unless there was a present consciousness of the rights of the other or an actual wrongful intention or such recklessness as would.evidence a conscious disregard of the rights of the other person.

Now, the facts in this case are entirely for you. If you find that the defendant is liable for actual damages, it would be your duty to award such damages as are alleged in this complaint which the testimony shows that he has sustained, and which flow directly and naturally and proximately from the act complained of. And you have heard the testimony, and if you find that there is liability upon that ground, the Court is going to leave it to you to say just what that damage is. If, in addition to that, you find that there was a wilful, wanton, or malicious disregard of the rights of the plaintiff, as alleged in this complaint, then you add such sum as you think would be a just punishment of the defendant to warn him and others not to do such acts as that in the future; hold it up as an example to deter the committing of such acts as that in the future.

And in estimating what would be a proper amount of punitive damages, you have the right to consider the wealth of the defendant, if the testimony in the case enlightens you upon that point.  A person, actual or artificial, may own lots of property, may have extensive property interests, and yet not be wealthy, because the liabilities may exceed in certain cases the assets.  A person may have extensive properties and at the same time be bankrupt.  If you gather from the testimony in this case any light as to the financial standing or wealth of the defendant, then, in considering an estimate of punitive damages you have a right to consider that; and properly so, because what might be a punishment for a person of only—of certain wealth, would not be in a case of a person of much greater wealth, where the punishment is sought in requiring one to pay money by way of damages.

If you find for the plaintiff, say, We find for the plaintiff so many dollars actual damages, if you so find.  And if, in addition to that, you find punitive damages, say so many dollars punitive damages.  Or, if you find one or the other, indicate which you do, and to that sign your name and under it write the word Foreman.  If the plaintiff has failed to establish his case by the greater weight or preponderance of the testimony, then you say, We find for the defendant, and under that write your name and under it write the word Foreman.  You will write your verdict here on the paper entitled summons and complaint.  And take with you any exhibits that you may desire, contract and any other papers you may desire.

Any suggestions, Mr. Tompkins?

Mr. Tompkins: There is one feature—I think it is the case of —— *v. The Railroad*—in estimating punitive damages the jury can also take into consideration the invasion of the plaintiff's rights.

The Court: Yes, sir.

Mr. Tompkins: In addition to the punishment for the defendant, they can also take into consideration punishment for invasion of the plaintiff's rights.

The Court: Yes, sir; I think I charged that punitive damages in this State are not awarded for a public wrong in the sense that a person is fined in the Court of General Sessions, nor are they regarded as a compensation in the sense that actual damages are, but the theory upon which they are awarded in this State is that they are given as a compensation to the plaintiff for the wilfulness with which a private right has been invaded, and the jury have a right to consider that in awarding punitive damages.

Mr. Herbert, have you anything?

Mr. Herbert: Well, your Honor, I do not think you instructed the jury that if Mr. Ruff, after he entered into possession, and before this property was seized, acknowledged defendant's title to the property, and also acknowledged Mr. C. W. Brown's obligation, that Mr. Ruff would then be estopped from denying the title of this defendant and would be bound by the contract.

The Court: I do not think that acknowledgment of that title or any acknowledgment of this contract would estop him short of an assumption on his part to assume the obligation, and that is why I restricted the construction to that point.    That gives you the benefit of that.

Mr. Herbert: Yes, sir.

Exceptions 4 to 8 are as follows:

4. Because his Honor erred in not instructing the jury, as requested by the defendant, that if the plaintiff, after he entered into possession, and before this property was seized, acknowledged defendant's title to the property, and also acknowledged Mr. C. W. Brown's obligation, that plaintiff would then be estopped from denying defendant's title, and would be bound by the contract, and in holding that no acknowledgment of the contract would estop plaintiff short

of an agreement on his part to assume the obligation of C. W. Brown.

5. Because his Honor erred in not instructing the jury that if the plaintiff acknowledged the title of the defendant to the property in question, and made no assertion of his right thereto, and gave the defendant no notice that he claimed said property under the lease of C. W. Brown to plaintiff, then the plaintiff waived the right to set up his claim of possession under the lease from C. W. Brown to plaintiff and waived the right to deny the title of the defendant.

6. Because his Honor erred in not submitting to the jury the issue in this case of whether or not the plaintiff was estopped from denying that he had notice of defendant's title to the property in question, and waived the right to deny that he had such notice, and in holding that nothing except an agreement to assume the obligation of C. W. Brown, which agreement must be based upon a consideration, would defeat the right of the plaintiff to the possession of the property.

7. Because his Honor erred in charging the jury that if the plaintiff had no notice, either actual or constructive, of the defendant's lien, nothing except an agreement on the part of the plaintiff to assume the contract of C. W. Brown could give defendant any right to the property in question, and that such agreement to assume the contract must be based upon a valuable consideration; whereas, his Honor should have charged that if the plaintiff acknowledged to the defendant the title of the defendant to the property and defendant acted on such acknowledgment, then the plaintiff could not thereafter deny the title of the defendant.

8. Because his Honor erred in charging the jury that section 3740 of the Code of Laws for 1912 of South Carolina applies to this case, and that the lease contract which the plaintiff had with C. W. Brown constitutes such a lien as is contemplated by the statute and is within the provisions of

the statute and made the plaintiff a subsequent creditor or purchaser from said C. W. Brown; whereas, his Honor should have held that since the plaintiff acknowledged defendant's title and acknowledged the obligation of C. W. Brown to defendant, the mere fact that the property in question was in the house rented by plaintiff from C. W. Brown gave plaintiff no title to said property paramount to the lien of defendant.

*Messrs. R. B. Herbert* and *William Elliott,* for appellant, cite: *As to the right of appellant to move its fixtures:* 38 Cyc. 999. *As to punitive damages:* 69 S. C. 434; 48 S. E. 460; 93 S. C. 125; 75 S. E. 1018; 67 S. C. 432; 46 S. E. 39. *As to plaintiff being estopped to bring this action:* 67 S. C. 432; 46 S. E. 39; 92 S. C. 743. *Plaintiff's lease not being recorded defendant was not charged with notice of it:* Civil Code 1912, sec. 3740.

*Messrs. Tompkins, Barnett & McDonald,* for respondent.

January 19, 1918.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action for damages, actual and punitive, for $5,000 by plaintiff against the defendant and tried at the Summer term of Court for Richland county, 1917, and resulted in a verdict for the plaintiff for $100 actual damages and $2,500 punitive damages. After verdict was rendered a motion for a new trial was made and his Honor reduced the verdict for punitive damages to $2,000, leaving the total verdict at $2,100, for which judgment was entered. After entry of judgment defendant appealed.

Exceptions 1, 2 and 3 allege error in not directing a verdict in favor of the defendant as moved for before his

Honor in the Circuit Court. It has been held so repeatedly by this Court that, where there is evidence from which more than one inference can be drawn in a cause on trial, it must be submitted to the jury for their determination, that quotation of authority is unnecessary, and in this case at bar there was ample testimony both as to actual and punitive damages to warrant his Honor in submitting the case to the jury, and these exceptions are overruled.

Exceptions 4, 5, 6 and 7 raise substantially the same point and will be considered together. They complain of error in not instructing the jury as requested by the defendant and in erroneous instructions in his charge as to plaintiff's acknowledgment of title of defendant of property in question and of·such conduct on plaintiff's part which amounted to waiver and estoppel by him.

The evidence in the case shows that the plaintiff leased from C. W. Brown a house furnished, which furniture consisted, among other things, of one gas stove of about the value of $30 and one gas heater of about the value of $70; that at that time it was in the possession of Brown, and as far as plaintiff knew Brown was the owner of the property; that on September 20, 1915, defendant's agents, in the absence of plaintiff and his wife, went in the house of plaintiff and over the protest of plaintiff's servants removed the gas stove and gas heater; that plaintiff's wife at that time was in the hospital very ill; that he had been in the house four or five months before he heard of any claim that Brown owed the defendant; that he knew nothing of the contract between Brown and the defendant until long after he had been put in possession of the house and furniture in dispute; that he offered to make payments on what Brown owed defendant if he could get Brown's consent and if Brown would deduct it from the rent; that after defendant removed the stove and heater he had to buy others from the defend-

ant; could not get them in Columbia from any one else; that it took several days to get the stove and heater installed, which put him in bad shape; that during all this time his wife was seriously ill in the hospital and not expected to live; and that she was expected home next day and needed hot water and food prepared, and when his wife came home she could not get it.

Under the pleadings and evidence in the case his Honor, by his charge, declared the law fully and correctly. He committed no error in his charge by commission or omission. He clearly stated the issues and declared the law applicable thereto fully, clearly, and comprehensively. There was nothing in his charge that was prejudicial to the defendant, and the exceptions are not meritorious, and these exceptions are overruled.       ·

Exception 7 is overruled. A lease for less than a year need not be recorded. The statute is applicable. The defendant brought the whole trouble on itself by the negligent and wilful action of its agents and servants, and the jury were justified under the facts of the case and law applicable to the facts in rendering a verdict both for actual and punitive damages. There is no prejudicial error as complained of. The exceptions are overruled.

Judgment affirmed.

Messrs. Justices Hydrick, Fraser and Gage concur.

Mr. Chief Justice Gary did not sit.